## VAN ANTWERP v. UNITED STATES.
### No. 19799–R.

District Court, N. D. California, S. D.
Sept. 21, 1936.

Pillsbury, Madison & Sutro, Eugene Bennett, Felix Smith, and Douglas Erskine, all of San Francisco, Cal., for plaintiff.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

ROCHE, District Judge.

Plaintiff taxpayer, William C. Van Antwerp, sues for a refund of $62,690.09 income tax paid for the calendar year 1928. His tax return for that year disclosed a tax due of $5,981.88 which was paid without dispute. An audit by a government agent in 1930 revealed a deficiency ($58,-124.55 tax and $4,565.54 interest) which was collected in 1931 by distraining without notice of deficiency as required by section 272(a) of the 1928 Revenue Act (26 U.S.C.A. § 272 and note).

I. The first issue arises when plaintiff asserts such collection was absolutely void because made without notice of deficiency and entitled him to a refund of the amount so collected regardless of whether any tax was due. The government interposes two defenses: First, the lack of notice was merely an irregularity totally insufficient to vitiate the collection, and the taxpayer's recovery is limited to the amount of overpayment he can show; second, the taxpayer waived his right to receive notice.

It appears that the contention of the taxpayer is without merit. He relies ·upon two cases to establish the proposition of absolute voidness: Angier Corp. v. Commissioner, 17 B.T.A. 1376; Id. (C.C.A.) 50 F.(2d) 887; Wyoming Central Ass'n v. Commissioner, 8 B.T.A. 1064.

An examination of them discloses that although decided in the taxpayer's favor, factually they are not in point. In both instances an appeal was taken to the Board of Tax Appeals and the cases decided *before* the taxes were collected; here the tax was satisfied before suit. The cited decisions therefore cannot be taken as authority for the proposition that a collection without notice was void and necessitated a refund of the amount *paid*.

The numerous cases relied upon by the government to the effect that a suit for tax refund is in nature ·an equitable proceeding, necessitating a showing of overpayment, seem more reasonable, although, as plaintiff points out, distinguishable on technical grounds. But the distinctions are not substantial. In the absence of an authoritative holding in favor of the taxpayer, the general rule requiring proof of overpayment must control.

Furthermore, the taxpayer waived his right to notice. He offered to compromise his 1927 and 1928 tax liabilities by a letter dated June 3, 1930, attached to T. D. forms 866 (see Plaintiff's Exhibits 4 and 6). The proffered compromise was to pay $59,880.21 tax for 1928 if the commissioner agreed that no 1927 tax was due. The letter reads in this particular: "The execution by each of the undersigned of the agreements covering the year 1928 and the offer to accept the determination of the amounts therein set forth are conditioned upon your execution of the agreement of final determination of no tax liability for the year 1927." Form 866 consisted of two portions. The first contained the offer of compromise and was signed by the taxpayer. The second appeared immediately below the first, and was separately signed by the taxpayer, providing: "Irrespective of the execution * * * of the foregoing instrument, the undersigned taxpayer hereby waives the restrictions provided in * * * Section 272(a) * * * on the assessment and collection of any deficiency."

The taxpayer argues that the letter conditioned the offer of compromise and the waiver of notice so that neither was valid unless the commissioner approved the compromise in its entirety, which concededly he did not. The argument is sound as applied to the offer of compromise. But the condition was not one underlying the entire document. Nothing in the letter indicated that the taxpayer was varying or conditioning the waiver which he separately signed, and which was a severable provision independent of the offer, and expressly designed to effect a waiver of notice when the compromise was not accepted. The condition went only to the acceptance of the 1927 return as a prerequisite to any additional voluntary tax liability on the 1928 return.

II. The second issue involved is concerned with whether the taxpayer is estopped to claim an otherwise valid refund based upon the community nature of the income in question. Briefly the facts are: Mr. and Mrs. Van Antwerp are residents of California and governed by its property law; under the state's community property system, prior to July 29, 1927, a husband was the virtual owner of all marital income, and hence was solely liable for the tax on it, as he was on his own separate income. On the latter date, the community property law was amended to give a wife an equal interest with that of her husband (see Cal.Civ.Code, § 161a). This gave rise to a serious division of opinion as to whether the husband was still taxable as before or whether the wife was now responsible for the tax on her share of the community income. The Commissioner of Internal Revenue took the view that the California amendment had not altered tax liability, and while on February 8, 1929, he notified his collectors (who gave public notice before 1928 returns were due) that he would accept returns wherein the spouses split the tax, he made it known that the government considered such returns erroneous and would take the cases to court. This was done, and in January of 1931 the Supreme Court in U. S. v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714, overruled the commissioner's stand, and allowed spouses to pay equal shares of the taxes on community income.

With this view of the legal aspect involved, the particular facts pertaining to Van Antwerp are more readily understandable. In 1928 he received an income of $297,714.13 as a partner in the stock brokerage firm of E. F. Hutton & Co. which he listed in that year's return as "partnership income." His wife, who returned her income separately, did not enter any portion of this amount in her report, although in the subsequent years of 1929–1932 she did claim portions of the earnings from Hutton Company as her share of community income. The Malcolm decision in 1931 indicated to plaintiff that he was taxable only on half the community income for 1928, so on March 14, 1932, he filed a claim for refund, four months before the statute of limitations barred his right to do so. However, the next day (March 15, 1932) the statute ran against the government's re-assessing his wife for her share of community income tax for 1928 (which was never assessed and which she has never paid). It was not until December of 1932 that the final question pertaining to this subject was decided by the Ninth Circuit Court of Appeals, namely: Income received after the community property law's amendment, from community property acquired before that amendment, was still taxable to the husband. Hirsch v. U. S. (C.C.A.) 62 F.(2d) 128. That case had a bearing on plaintiff's tax liability and is the reason advanced by him for waiting fourteen months before filing his refund claim.

The elements of estoppel are few and simple although the same cannot always be said of their application: there must be: (1) False representations or wrongful misleading silence; (2) as to facts, not law; (3) the party claiming the estoppel's benefit must rely upon such misrepresentations or concealment; (4) without knowledge of the true facts; and (5) must be adversely affected thereby. U. S. v. S. F. Scott & Sons (C.C.A.) 69 F.(2d) 728, 732.

First, the question is presented whether there was a factual misrepresentation by the taxpayer. Viewing all the circumstances, there was. The listing by plaintiff in his verified separate return of partnership earnings warranted that it was his separate income.

Up to July of 1927 it was absolutely inconsequential whether it was separate or community income as he was taxable alike on both. After the Supreme Court holding of January, 1931, its nature was a vital factor. What of the interim during which the report was filed?

While after February 8, 1929, the commissioner allowed a wife to return half the community income, his ruling was

merely permissive and not an abandonment of his prior position that the community income was returnable by the husband. Nonetheless it offered a way to disclose community nature of income, and if followed would allow of no dispute as to the representation of the kind of income involved. But taxpayer chose to ignore his opportunity. With a controversy raging, and hinging on the variety of the income, he filed a separate report returning all of the income, and his wife, none. It cannot be said that the representation was one of law alone, for the nature of partnership income can vary with the facts and can well be entirely separate. Taxpayer so represented.

The situation would have been different had the commissioner made no ruling in February of 1929, or had thereby required the spouses to split the tax on community income. It was of no significance, for reasons pointed out later, that Mr. and Mrs. Van Antwerp took advantage of the commissioner's ruling to report the community income half to each for 1929–1932.

Second, if this conclusion is erroneous, then the gravamen of the estoppel issue is whether there was a wrongful misleading silence on the part of Van Antwerp. The government predicates its case upon the only two possible bases there are: (1) Failure to disclose that there was no contract making partnership earnings taxpayer's separate property (a procedure permissible under California law); (2) failure to file the claim for refund until the day before the statute of limitations ran against the government's claim for the wife's share of community income taxes. In reality, these bases are interwoven and inseparable, for estoppel could not exist by virtue of either alone.

As to the first: The absence or presence of such a contract (in fact, there was none as the government concedes at page 16 of its brief) was immaterial until either February of 1929 or January of 1931 —assume the latter date as more favorable to the taxpayer. The government otherwise knew of every single fact pertaining to plaintiff's tax liability of which the plaintiff himself was cognizant, except the negative one of the absence of a contract. Although the returns for the years subsequent to 1928 took advantage of the commissioner's ruling and returned part of the community income on the wife's report, those returns could not per se put the gov-

ernment on notice of the community nature of the income, for they were compatible with the income being either community, or separate by virtue of an agreement. In passing, however, it can be remarked that the tax never was assessed on the basis of such a contract. The 1928 return was misleading.

As to the second: Taxpayer filed his refund claim the day before the statute of limitations ran against the government and four months before it ran against his right to file. Along this line, if from January, 1931, to March, 1932, could be classified as a reasonable time within which to file the claim (and thus give notice to the government), or if March 14 to March 15, 1932, could be held a reasonable period in which the government could act against the wife, no estoppel would lie. But it is difficult to say that fourteen months on the one hand (even taking into consideration Hirsch v. U. S.), or one day on the other, is reasonable, even though the statute allowed four additional months within which the taxpayer could act. The court realizes, in effect, it is judicially manipulating statutory limitations, but that is the necessary effect of an estoppel in some cases.

If the premise of unreasonableness of time is accepted, then estoppel could be invoked if a duty can be found upon the part of the taxpayer to disclose the lack of the contract. Wiser v. Lawler, 189 U. S. 260, 270, 23 S.Ct. 624, 47 L.Ed. 802; Baxter v. Jones (C.C.) 185 F. 900.

For it is not enough that the silence be misleading—in addition, it must be wrongful—i. e., a breach of a duty. U. S v. S. F. Scott & Sons, supra; Wiser v. Lawler, supra.

The court does not employ "duty to disclose the nature of the income," for the other facts relative to the nature of the income were fully known to the government and legally it knew or was responsible for knowing that the larger portion of the income was community in the absence of a contract to the contrary. U. S. v. S. F. Scott & Sons, supra.

Wherein can a duty be found to disclose the fact that there was no contract, or to file a claim based thereon within a period substantially shorter than that allowed by statute? Any such duty, of course, arose only in the event Van Antwerp subsequently endeavored to claim a refund.

■ It is apparent under fundamental principles pointed out by Justice Cardozo

in another tax case (Stearns Co. v. U. S., 291 U.S. 54, at page 61, 54 S.Ct. 325, 328, 78 L.Ed. 647) that a taxpayer definitely owes some duty to the government, which, if not fulfilled, will bar his recovery: "The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him, in effect: "This is your own act, and therefore you are no damnified." ' [Citing cases.] Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong [Case.] A suit may not be built on an omission induced by him who sues." In other words, there is a general duty of dealing fairly with the government which must be observed as a prerequisite to suing.

In another tax case (Commissioner v. Liberty Bank & Trust Co., 59 F.(2d) 320, at page 325), the Sixth Circuit Court of Appeals has discussed the question of disclosure of facts in estoppel cases and the taxpayer's duty in that regard: "It may be conceded that the Commissioner may not blindly accept every statement which a taxpayer makes as to a fact, and by acting thereon preclude the taxpayer from showing at some other time that the statement was mistakenly made. * * * The Commissioner of necessity does and must rely largely upon the representations of the taxpayer, and, in order to estop the taxpayer from assuming a contrary position, he is not compelled to look with suspicion on all such representations and himself examine, or cause to be examined, the financial condition of the taxpayer's debtors. *It is the duty of the taxpayer to deal fairly and truthfully with the government. The taxpayer in this case was in a better position to ascertain the facts * * * than was the government, and it cannot now say that the government, by the exercise of reasonable care, ought to have done what it failed to do. The officers of the government * * * have the right to assume that a taxpayer will do his duty.*"

While in these cases the facts were stronger against the taxpayer than they are here, the principles set forth nevertheless are applicable. The absence of a contract is as much a fact, even though a negative one, as the presence of one, and its concealment is material as well as misleading. Under the facts of this case, the controversy regarding taxpayer's liability hinged on the nature of the income. It was only fair that he should disclose all material facts pertaining thereto. Especially is this so in view of the conferences held between the taxpayer and internal revenue agents in regard to the 1928 tax.

Third, what has been said disposes of the question of whether the representations were of law or fact.

Fourth, did the government rely on the taxpayer's silence? In other words, was it ignorant of the true facts?

The taxpayer contends the government's loss was occasioned by the commissioner's mistaken view of the law. If it was, the government cannot assert estoppel. Gott v. Live Poultry, etc., Co., 17 Del Ch. 288, 153 A. 801, at page 805.

Assume that up to January, 1931, the failure to collect Mrs. Van Antwerp's tax was the fault of the commissioner and not of the plaintiff. Thereafter a different situation existed. Either the commissioner relied on the silence of the taxpayer thinking that the latter did not know of his right, or that the income was really separate; was derelict in his duty in failing to modify and re-assess the taxes involved; or was attempting to wait till the last possible moment in suing Mrs. Van Antwerp in the hope that the period remaining would be too short for Mr. Van Antwerp to claim a refund, and thus give the government additional but undeserved revenue. That the last contingency is untenable is indicated by the facts that the commissioner never sued Mrs. Van Antwerp, and if he had, Mr. Van Antwerp would have had at least four months within which to claim his refund. Neither would the commissioner, as a reasonable man, be justified in believing that the plaintiff was sleeping on his rights in view of the large amount involved, and the expert agents he had employed previously in relation to the tax. Nothing in the record justifies such a view.

There remains then the question of whether the commissioner was merely negligent, with which is interwoven the further inquiry as to whether he was justified in believing that the silence of the taxpayer was because the income was separate and not because the taxpayer was endeav-

234

oring to file his refund claim just before, or up to four months after, the statute of limitations had run against the right to assess the wife for her additional taxes. Even though the burden of establishing the estoppel is upon the government, a presumption cannot be entertained that the commissioner failed to do his duty and did not look into the matter at all. Upon investigation he would find that Van Antwerp was entitled to a refund if the income was community, but the government files could give no absolute indication as to whether the income was community because of the absence of data as to a contract making it separate, although otherwise the commissioner's information would tend to show that the major portion of the income was community.

It cannot be concluded that the taxpayer deliberately waited until March 14, 1932, to file his refund claim in order to mislead the government and prevent an assessment against his wife. See Wiser v. Lawler, supra, 189 U.S. 260, at page 271, 23 S.Ct. 624, 47 L.Ed. 802. Factors do not point strongly toward this fraudulent intent. Taxpayer excuses his delay on the ground he was waiting for the decision to come down in Hirsch v. U. S. An examination of the appellate record in that case will disclose that the arguments on appeal did not take place until late in November of 1932, and it was decided the following December. But in the trial court, it was tried October 26, 1931, and not decided until April 19, 1932.

In view of the duty of the taxpayer to disclose the true facts and his failure to do so for fourteen months, it is the court's conclusion that the commissioner was entitled to, and did, rely on Van Antwerp's long silence as indicating that he had no fair claim to a refund.

Fifth, did the government suffer loss? It is too plain for argument that it would be deprived of a substantial amount of revenue should the plaintiff not be estopped—a sufficient detriment. Haag v. Commissioner (C.C.A.) 59 F.(2d) 514.

As to the cases cited by both sides, none were conclusively in point, and it would do little good to discuss them in detail here. Haag v. Commissioner, supra, was the closest, and it favored the government.

The question has arisen in the court's mind as to whether the government should invoke estoppel against this plaintiff, or whether he should be allowed to recover, and the government permitted to sue his wife for her taxes, pleading estoppel in that suit against her setting up the statute of limitations as a defense. Such a procedure would exactly adjust tax liability.

Whatever doubts there might be in another case, they are resolved against the taxpayers here because it was indisputably proven that the husband was the sole guiding financial light in the Van Antwerp household; he handled all his wife's business affairs; he prepared the returns and paid the taxes for both of them. The wife did not act independently and merely signed the proper papers presented to her. The affairs of both are so interwoven that it would be a travesty to separate them for purposes of further suit. The cases, moreover, seem to indicate that where the affairs of two taxpayers are intimately connected, as here, the estoppel lies in the first suit.

It will be unnecessary to consider the other points raised during the trial and arguments.

Judgment with costs will be entered in favor of the government after the preparation of findings and conclusions.