**Julia Church FECAROTTA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2154.**

United States District Court
D. Arizona.

June 5, 1956.

McLane & McLane, Phoenix, Ariz., for plaintiff.

Jack D. H. Hays, U. S. Atty., Phoenix, Ariz., for defendant.

LING, Chief Judge.

The above entitled cause having been heard by the Court on October 19, 1955, and after considering the oral evidence, exhibits, and written briefs by the parties, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. This is an action for a refund of federal income taxes in the amount of $4,500 which action was filed by plaintiff. The complaint herein was filed within the period prescribed by law, and it was preceded by a timely claim for refund.

2. Jurisdiction is conferred upon the Court by section 1346, Title 28 U.S.C.A.

3. Plaintiff is a resident of Phoenix, Arizona, and a citizen of Arizona.

4. Plaintiff was married to Marshall T. Church on December 2, 1948.

5. For the taxable year of 1948, plaintiff filed a separate federal income tax return.

6. Marshall T. Church filed separate federal income tax returns for the taxable years of 1947 and 1948.

7. Marshall T. Church's former wife, Esther Church, filed separate returns for the taxable years of 1947 and 1948.

8. On November 12, 1949, nearly one year after their marriage, Marshall T. Church and Julia Church Fecarotta (then Julia Church) purchased as joint tenants with the right of survivorship the following described real property:

Lots Three (3), Four (4), Five (5), Six (6), Seven (7) and Eight (8), Block One (1), Amended Plat of Desert Wells, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book 38 of Maps, page 3 thereof.

9. On November 28, 1949, Marshall T. Church and Julia Church Fecarotta (then Julia Church) purchased as joint tenants with the right of survivorship the following described real property:

Lots Nine (9), Ten (10), Eleven (11), and Twelve (12), Block One (1), Amended Plat of Desert Wells, according to the plat thereof of record in the office of the County Recorder of Maricopa County, Arizona, in Book 38 of Maps, at page 3 thereof.

10. On February 1, 1951, Marshall T. Church died. No executor, executrix, administrator, or administratrix was appointed to administer any estate. In fact no probate proceedings were instituted.

11. Therefore, on February 1, 1951, plaintiff, as the surviving joint tenant, was the only person holding any interest in or title to the real property described above.

12. On February 19, 1952, over one year after the death of Marshall T. Church, the Commissioner of Internal Revenue issued a statutory notice of deficiency for the taxable years of 1947 and 1948 for income taxes and the 50% fraud penalties totaling $15,804.81 to:

"Mr. Marshall T. Church
c/o Judy Church
Route 2, Box 345
Mesa, Arizona"

13. The above referred to statutory notice of deficiency was the only such notice issued by the Commissioner of Internal Revenue for the taxable years 1947 and 1948 respecting the federal income tax liability of either Marshall T. Church or plaintiff.

14. The said statutory notice of deficiency dated February 19, 1952, was received in an envelope delivered by registered mail addressed to:

"Mr. Marshall T. Church
c/o Judy Church
Route 2, Box 345
Mesa, Arizona"

15. The said statutory notice of deficiency contained the following salutation and first paragraph:

"Dear *Mr. Church*

"*You* are advised that the determination of *your* income tax liability for the taxable years ended December 31, 1947 and 1948, discloses deficiencies of $777.98 and $8,552.42, with penalties of $388.99 and $6,085.42, respectively, under section 293(b) of the Internal Revenue Code [26 U.S.C.A. § 293(b)], as shown in the statement attached." (Italics supplied.)

16. Contained in the referred-to statement attached to the notice of deficiency under the explanations for the taxable year 1947 is the following:

"Explanation of Adjustment

"(a) It is held that the 'bonus' payments of $4,541.67 received by you from customers of Alamo Pottery, Inc., are taxable income, one-

half to be taxable to *you*, $2,270.84, and the remainder to *your* former wife, Esther Church." (Italics supplied.)

17. Also contained in the statement attached to the said notice of deficiency under the explanations for the taxable year 1948 is the following:

"Explanation of Adjustment

"(a) It is held that 'bonus' payments of $45,656.83, received by you from customers of Alamo Pottery, Inc., are taxable income, one-half to *you* in the amount of $22,828.42." (Italics supplied.)

18. After receipt of the notice of deficiency on or about February 19, 1952, plaintiff wrote to the Internal Revenue Agent in Charge, Dallas, Texas, on February 29, 1952, stating:

"Dear Sir          Re: IRA:90 D–H

"I am in receipt of your statement showing a tax liability in the amount of $1,166.97 for 1947 and $14,637.84 for 1948, *against my deceased husband, Marshall T. Church * * *.*" (Italics supplied.)

19. On March 7, 1952, the Internal Revenue Agent in Charge at Dallas, Texas, replied to plaintiff's letter of February 29, 1952, saying:

"Dear Mrs. Church:

"Your letter of February 29, 1952, has been received in this office. You request transfer of the *1947 and 1948 case of your deceased husband to Arizona * * *.*" (Italics supplied.)

20. After receipt of the notice of deficiency dated February 19, 1952, plaintiff went to see Mr. Taylor in the Phoenix office of the Collector of Internal Revenue taking with her the notice of deficiency and some papers. At this conference with Mr. Taylor, plaintiff attempted to persuade him that she was not responsible for the tax, had not been married to Mr. Church, knew nothing about any money, and asked him to explain what the matter was all about. Mr. Taylor advised plaintiff to go to Washington, D. C., because her file was there.

21. Plaintiff thereupon, toward the end of March of 1952, did go to Washington, D. C., to the offices of the Bureau of Internal Revenue. In the Washington, D. C., office of the Bureau of Internal Revenue, she talked with two Bureau employees stating again that the liability was not hers, that the money was not hers, and asked what could be done to clear up the matter. The two employees in the Washington, D. C., office were unable to give plaintiff any assistance, and advised her to go to the Dallas, Texas, office of the Bureau of Internal Revenue.

22. Thereupon, plaintiff went to Dallas, Texas, and on the 25th of March, 1952, she talked with a Mr. Wiczell, of the Technical Staff. At the conference with Mr. Wiczell, plaintiff again renewed her plea for help stating she did not know what the case was all about, did not understand it, had no records, that it could not be her liability, and that she was not even married to Mr. Church at that time. Mr. Wiczell had his secretary type a letter to plaintiff telling her what to do, which letter set forth the steps required for the filing of a protest.

23. After obtaining the letter, plaintiff then went to see a firm of certified public accountants in Dallas, Texas, named Arthur Anderson & Co. who suggested that she consult a Mr. Matthews, an attorney.

24. The following day, plaintiff saw Mr. Matthews but did not retain him because of his advice that the question was one of general law and his suggestion that an attorney in Phoenix, Arizona, be retained.

25. Thereupon she returned to Phoenix, Arizona, and consulted an attorney named Jack Cavness who assisted in the preparation of a formal protest.

26. Mr. Cavness helped prepare the protest for plaintiff as a favor to her, but would not file it himself because the matter involved federal tax law with which he was not conversant.

27. The assistance in preparing the protest was the extent of Mr. Cavness' legal counseling with respect to plaintiff's dealings with the Treasury Department concerning Marshall T. Church's income tax liability for 1947 and 1948.

28. On April 21, 1952, after receipt of the protest referred to above, the Dallas, Texas, office of the Technical Staff wrote plaintiff stating there was not sufficient time to consider the case and suggested the filing of a petition in the Tax Court.

29. On July 14, 1952, the Collector of Internal Revenue at Austin, Texas, mailed two notices on U. S. Treasury Form 7658—Revised April 1948, to:

"Marshall T. Church, Deceased
c/o Judy Church
Route 2, Box 345
Mesa, Arizona"

Each notice stated that the amount of tax, penalty and interest set forth had been assessed, and that demand was being made for payment thereof. The said notice for the year 1947 demanded $777.98 in additional tax, $201.71 in interest and $388.99 of fraud penalty making a total of $1,368.68. The said notice for the year 1948 demanded $8,552.42 in additional tax, $605.41 in interest and $6,085.42 of fraud penalty making a total of $15,243.25 less $6,867.83 already paid by Mr. Church, leaving a balance due of $8,395.42.

30. On August 27, 1952, the Acting Collector of Internal Revenue in Austin, Texas, mailed two more notices on U. S. Treasury Form 21, Revised November of 1949, stating that if payment was not received in ten days, the law provided for issuance of a warrant for distraint authorizing collection by seizure and sale of property. These August 27, 1952, notices were issued to:

"Marshall T. Church, Deceased
c/o Judy Church
Route 2, Box 345
Mesa, Arizona"

and referred to the years 1947 and 1948.

31. On October 2, 1952, a notice was issued by the Phoenix, Arizona, Collector of Internal Revenue office stating that a warrant for distraint had been issued for the taxable year 1948. This notice was addressed to:

"Est—Marshall T. Church
c/o Judy Church
Mesa, Arizona"

Defendant was unable to locate the like notice for 1947.

32. In October, after receipt of the notice referred to in finding 31, plaintiff called at the Phoenix office of the Collector of Internal Revenue to talk with Mr. J. D. Williams who signed the notice of distraint. She was referred to a Mr. Yeager, who asked her to explain the situation to him at which time plaintiff told him she was not Mr. Church's wife until December 2nd of 1948, did not know what it was about, and had no records concerning the money received. Mr. Yeager informed plaintiff that the liability was hers and that nothing could be done until the Treasury received payment.

33. On November 6, 1952, a Notice of Tax Lien was filed in the office of the County Recorder, Maricopa County, by the Assistant Collector of Internal Revenue in Phoenix, Arizona, against:

"Marshall T. Church, deceased c/o Judy Church"

in the amount of $1,368.68 for the taxable year 1947.

34. On December 11, 1952, a Notice of Tax Lien was filed in the office of the County Recorder, Maricopa County, by Wilson Wood, Director of Internal Revenue at Phoenix, Arizona, against:

"Est. Marshall T. Church c/o Judy Church"

in the amount of $8,375.42 for the taxable year of 1948.

35. From the date upon which the 1948 Notice of Tax Lien was filed (December 11, 1952) until the actual sale on March 25, 1953, plaintiff made several attempts to sell the real property described in findings 8 and 9 which had

been acquired with Marshall T. Church in 1949 as joint tenants with the right of survivorship. However, she could not sell the real property because of the liens filed on November 6, and December 11 of 1952 by the Treasury.

36. Each time a prospective purchaser was found, plaintiff consulted Mr. Yeager of the Phoenix, Arizona, office of the Treasury Department in an attempt to get him to release the liens.

37. The liens referred to in findings 33 and 34 were not released prior to May 6, 1953.

38. On March 25, 1953, plaintiff contracted to sell the said real property described in 8 and 9 to Merritt and Bess Estes.

39. On or about April 10, 1953, the Phoenix Title & Trust Company, an Arizona Title insurance company, issued a title report, a copy of which was received by plaintiff, setting forth certain requirements which had to be met by the Seller (plaintiff) before a policy of title insurance would be issued on the real property.

40. Requirements No. 4 and 5 of that report were the discharge or payment of the liens filed on November 6 and December 11, 1952, by the Phoenix Collector of Internal Revenue and Director of Internal Revenue, respectively.

41. Conrad Kleinman, an attorney at law, representing Mr. and Mrs. Estes, advised the Estees that they not take the real property subject to the liens of November 6, and December 11, 1952. At the time Mr. Kleinman gave such advice, Mr. and Mrs. Estes were ready to withdraw from the sale.

42. After receiving the above mentioned Title Report, plaintiff again called at the Treasury offices in Phoenix, Arizona, where she talked with a Mr. McRae, Assistant District Director, explaining to him what the circumstances were, that she had to sell the property, and asked what could be done to release the liens on the real property. Thereupon, Mr. McRae's office prepared a document entitled Application for Discharge of Property from Federal Tax Lien.

43. The said application set forth the legal description of the real property described in findings 8 and 9 and offered to pay $4,500 for the release of the November 6 and December 11, 1952, liens.

44. Plaintiff signed the application in her individual capacity either as "Judy Church Fecarotta, Judy Bittle Genius Church Fecarotta, or Julia Church Fecarotta."

45. On April 17, 1953, Mr. McRae, as Assistant Director of Internal Revenue in Phoenix, Arizona, wrote to the Phoenix Title & Trust Company, enclosing a Certificate of Discharge of Property from Federal Tax Lien authorizing the title company to file the certificate upon payment of $4,500 directly to the Director of Internal Revenue from the proceeds of the Fecarotta-Estes escrow account.

46. The Phoenix Title & Trust Company paid, on May 6, 1953, the $4,500 from the sale proceeds of the Fecarotta-Estes sale directly to the Director of Internal Revenue.

47. On May 6, 1953, the Phoenix Title & Trust Company filed the said Certificate of Discharge of Property from Federal Tax Lien with the County Recorder, Maricopa County.

48. The said certificate stated that the liens of November 6th and December 11th, 1952, were being released from the real property described in findings 8 and 9.

49. When the $4,500 payment from the Fecarotta-Estes sale was received by the Director of Internal Revenue in Phoenix, Arizona, on May 8, 1953, the District Director applied $1,435.24 of the $4,500 to the delinquent tax account of Marshall T. Church for the period from January 1, 1947, to December 31, 1947, and applied $3,064.76 of the $4,500 to the delinquent tax account of Marshall T. Church for the period January 1, 1948, to December 31, 1948.

50. Thereafter, on September 9, 1953, within the period of limitations prescrib-

ed by Section 322(b) (1) of the Internal Revenue Code of 1939 (26 U.S.C.A. § 322(b) (1) ), plaintiff filed with the District Director of Internal Revenue at Phoenix, Arizona, two claims for refund. One claim for refund was in the amount of $1,435.24 paid on May 8, 1953, or such greater amount as is legally refundable. The second claim for refund was in the amount of $3,064.76 paid on May 8, 1953, or such greater amount as is legally refundable plus interest.

51. A period in excess of six months elapsed from the time the plaintiff filed the two claims for refund until the date this cause of action was commenced.

52. On November 17, 1954, the Commissioner of Internal Revenue acting through his duly authorized agent, W. T. Tignor, Associate Chief, Appellate Division, Los Angeles, California, notified plaintiff that both her claims for refund were rejected for the following reasons:

"The sum of $4,500 which you seek to recover was *voluntary* paid to the District Director to secure release of liens filed against Marshall T. Church, deceased, for unpaid income tax, penalties and interest. To the extent that the $4,500 represented a payment of taxes, penalty and interest legally due from Marshall T. Church, it may not be recovered by you." (Italics supplied.)

53. The said payment of $4,500 by plaintiff was not voluntary.

54. The collection of $4,500 from plaintiff in income tax and fraud penalties due by Marshall T. Church for 1947 and 1948 was unlawful, unjust, erroneous, and without authority of any kind.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter in this case.

2. The assessment and collection of the $4,500, representing the federal income tax liability of plaintiff's deceased husband, violated Section 272(a) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 272(a), which requires the issu-

ance of a notice of deficiency to the taxpayer prior to distraint proceedings.

3. The only statutory notice of deficiency issued by the Commissioner of Internal Revenue in this case does not qualify, as a matter of law, as a statutory notice of deficiency to plaintiff. Nor does it qualify as a notice of transferee or fiduciary liability. 9 Mertens, Law of Federal Income Taxation, 53.42 at 537 (1943) ; See Gott v. Live Poultry Transit Co., 1931, 17 Del.Ch. 288, 153 A. 801; William A. Matern, 1930, 21 B.T.A. 384; Katherine L. Voltz, Executrix, 1929, 16 B.T.A. 167; Ruth Mintz Sack, 1937, 36 B.T.A. 595.

4. Fiduciary liability of plaintiff for the unpaid income taxes of her deceased husband does not exist because no assets were received by plaintiff from her deceased husband in a fiduciary capacity, and no assets were paid out in satisfying the debts of the estate over which the government had priority. Section 3467, Revised Statutes, 31 U.S.C.A. § 192; 6 Mertens, Law of Federal Income Taxation, sec. 36.86 at 400 (1949).

5. The defendant failed to prove that transferee liability existed on the part of plaintiff as required by Section 1119 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 1119.

6. Transferee liability could not be proved, under the facts of this case, because there was no transfer to plaintiff of the real property upon which defendant's agent impressed liens. Parsons v. Anglim, 9 Cir., 1944, 143 F.2d 534; Irvine v. Helvering, 8 Cir., 1938, 99 F.2d 265.

7. The payment of the $4,500 by plaintiff to the District Director of Internal Revenue in Phoenix, was not voluntary.

8. A surviving joint tenant becomes the absolute owner of property held in joint tenancy, and is not liable for unpaid income taxes of the deceased joint tenant. Jessie Smith, Executrix, 1931, 24 B.T.A. 807, 813; Irvine v. Helvering, 8 Cir., 1938, 99 F.2d 265; Parsons v. Anglim, 9 Cir., 1944, 143 F.2d

534; Lillian L. Malley, Assertion of a Transferee Liability, 7th Inst.Fed.Tax. 224, 236 (1949).

9. Plaintiff is not estopped, as defendant contends, from obtaining a refund of the $4,500. Furthermore, defendant has neither pleaded the doctrine of estoppel as required by Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., nor proved the elements thereof at the trial of the cause.

10. Plaintiff was not jointly and severally liable for any unpaid income taxes due by her deceased husband for 1947 and 1948.

11. Plaintiff has sustained her burden of proof.

12. The collection of the $4,500, involved herein, from plaintiff was erroneous and unlawful, and she is entitled to a refund of $4,500 plus interest at the rate of six per cent per annum from May 8, 1953 and costs.

Judgment will be entered in accordance with the above Finding.