UNITED STATES v. S. F. SCOTT & SONS, Inc.

No. 2830.

Circuit Court of Appeals, First Circuit.

March 14, 1934.

D. Louis Bergeron, Sp. Asst. Atty. Gen. (Sewall Key and John H. McEvers, Sp. Assts. Atty. Gen., and Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Howe P. Cochran, of Washington, D. C. (Joel Eastman, of Boston, Mass., and C. Leo DeOrsey, of Washington, D. C., on the brief), for appellee.

Before WILSON, MORTON, and LETTS, District Judges.

WILSON, District Judge.

This is an appeal by the United States from a judgment of the District Court for the District of Massachusetts involving income taxes for the year 1918 in the sum of $96,803.87 with interest. The case was tried upon an agreed statement of facts and certain documentary evidence, a jury trial being waived. Judgment was entered in favor of the plaintiff, appellee.

The issues raised by the appellant on appeal are:

"1. Was the payment made by the plaintiff, appellee, a voluntary payment and therefore not recoverable?

"2. Is the plaintiff, appellee, estopped from asserting its right to recover the taxes involved herein?"

According to the agreed statement of facts Samuel F. Scott was the owner of a woolen mill located in Uxbridge, Mass., and known as the Elmdale Mill, which he operated as sole owner for some time prior to January 1, 1918, and until June 28, 1919, when he organized a corporation under the name of S. F. Scott & Sons, Inc.

On April 7, 1919, Samuel F. Scott filed with the Collector of Internal Revenue in his district his individual income tax return covering the calendar year 1918, and disclosing a tax liability of $112,239.35. The income reported in his return included the profits earned by the mill during the calendar year 1918.

On June 13, 1919, Mr. Scott filed with the Collector of Internal Revenue for his district an amended individual income tax return covering the calendar year 1918, which amended return showed a tax liability of only $83,465.28; and on September 5, 1919, he filed with the Collector a claim in abatement of a portion of the tax computed on his return filed April 7, 1919, in the sum of $28,774.17, and paid the balance of his tax for 1918 in installments, the last installment being paid on December 1, 1919.

On March 13, 1920, the corporation, S. F. Scott & Sons, Inc., filed with the Collector of Internal Revenue a corporation income and profits tax return covering the full calendar year 1919; and on the same date Samuel F. Scott also filed with the Collector of Internal Revenue his individual income tax return covering the full calendar year 1919, including therein his salary received from the corporation.

On May 3, 1921, the Commissioner wrote a letter directed to S. F. Scott & Sons Company, assuming they were a partnership, in which letter the Commissioner notified the parties to whom the letter was directed that they had probably misconstrued section 330 of the Revenue Act of 1918 (40 Stat. 1094), and Article 933 of Regulation 45, and informed them that where a partnership, incorporated prior to July 1, 1919, elects to be taxed as a corporation for the calendar year 1919, it will be necessary for it also to file a return as a corporation for the calendar year 1918.

On May 26, 1921, the corporation, S. F. Scott & Sons, Inc., by its president, S. F. Scott, wrote to the Commissioner of Internal Revenue at Washington in reply to his favor

of the 3d of May, saying that the corporation had referred the subject to its accountants, who were instructed to compile the returns for the years 1918 and 1919 according to the regulation to which the Commissioner referred in his letter of May 3d; that the amended returns, if submitted, would still leave several questions open to doubt, and suggested a conference in Washington with its accountants to assist in determining the true tax liability for the years 1918 and 1919.

After a conference on June 14, 1921, the appellee's accountants on July 18, 1921, forwarded to the Commissioner of Internal Revenue an amended individual income tax return of Samuel F. Scott for the calendar year 1918, showing a tax liability of $9,907.65, and a corporation income and profits tax return of S. F. Scott & Sons, Inc., covering the calendar year 1918, showing a tax liability of $97,809.29. These returns were never filed with the Collector, nor did the Commissioner assess a tax based on the return of the corporation, but assessed a deficiency tax on the corporation. Whether the corporation, within the meaning of the Income Tax Acts, filed a corporation return for 1918, or merely submitted a return for consideration of the Commissioner in accordance with his suggestion, is of no consequence.

The record does not show that the executors of the estate of Samuel F. Scott, who died in 1922, ever applied for a refund of the taxes paid by Samuel F. Scott for the year 1918; but, so far as the record shows, the Commissioner on his own initiative on the schedule of the Bureau of Internal Revenue dated January 25, 1924, listed an overassessment of income taxes for the calendar year 1918 in the name of Samuel F. Scott in the amount of $102,133.95, and a certificate to that effect was issued in favor of the executors of the estate of Samuel F. Scott. Of this amount $28,774.07 represented the abatement of a portion of the tax assessed against Samuel F. Scott for the year 1918, $206.76 was applied as a credit on assessments against Samuel F. Scott for other years, and the balance of $73,153.12 was refunded to the executors on December 18, 1924, together with interest thereon amounting to $22,707.72.

The above amount of $102,133.95 abated, credited, and refunded with interest was the individual income tax of Samuel F. Scott as computed by the Commissioner for the calendar year 1918.

On February 12, 1925, a thirty-day letter and attached statement were forwarded to S. F. Scott & Sons, Inc., advising it of a deficiency tax for the calendar year 1918 in the amount of $96,803.87 as an income and excess profits tax on the Elmdale Mill for that calendar year. The notice of the deficiency assessment was accompanied by a form of agreement consenting to the assessment of such deficiency tax, which the corporation was requested to execute.

On May 4, 1925, a representative of S. F. Scott & Sons, Inc., forwarded to the Commissioner of Internal Revenue the signed agreement by which the corporation waived its right of appeal under section 274 (a) of the Revenue Act of 1924 (26 USCA § 1048 note), and consented to the assessment of the deficiency tax of $96,803.87, but at the same time expressly reserved the right to appeal or file a claim for refund, if upon further investigation it appeared that the determination of the assessment was erroneous. The Commissioner also reserved the right to reject the agreement and give the statutory sixty-day deficiency notice. This he did not do, but evidently assessed the tax with the understanding that the taxpayer could appeal or claim a refund.

On June 30, 1925, a notice and demand for payment of the above deficiency assessment was made upon the corporation, stating that, if not paid in ten days, interest at the rate of 1 per cent. per month would be added. Said sum was paid in full on July 13, 1925.

On May 11, 1929, within the period of limitation for claiming a refund, the plaintiff filed with the Collector of Internal Revenue a claim for refund of the amount paid, which was duly rejected and this suit was brought to recover the same with interest.

The District Court held that the plaintiff, appellee, was entitled to judgment for the reason that the deficiency tax was assessed against the wrong party, as the corporation did not exist in 1918, and, therefore, no valid tax could be assessed against it. Dreyfuss Dry Goods Co. v. Lines (C. C. A.) 24 F.(2d) 29; Artemas Ward, Inc., v. Commissioner, 21 B. T. A. 1096; Murphy Dillon Co. v. Commissioner, 23 B. T. A. 1320; Welfare Loan Society v. Commissioner, 20 B. T. A. 1113; Sadowsky v. Anderson (C. C. A.) 29 F.(2d) 677, 678. This was also recognized in Clift & Goodrich, Inc., v. United States (C. C. A.) 56 F.(2d) 751, 752.

It is now admitted that the tax was erroneously assessed against the corporation, due to a misinterpretation of section 330 of the Revenue Act of 1918, which provided that "in the case of the organization as a corporation before July 1, 1919, of any trade or business

in which capital is a material income-producing factor and which was previously owned by a partnership or individual, the net income of such trade or business from January 1, 1918, to the date of such reorganization may at the option of the individual or partnership be taxed as the net income of a corporation is taxed under Titles II and III; in which event the net income and invested capital of such trade or business shall be computed as if such corporation had been in existence on and after January 1, 1918. * * * "

Unless Samuel F. Scott by filing an individual return on his income for that year had precluded himself from electing to be taxed on his income from the Elmdale Mill for the year 1918 in the same manner as a corporation, the government might have properly assessed the 1918 and 1919 taxes on the income from the mill against Samuel F. Scott as an individual, but on the same basis as the corporation would have been taxed if it had existed since January 1, 1918; and on that basis have adjusted the payments made by Samuel F. Scott, instead of refunding any portion of the money paid by Mr. Scott as his individual tax for 1918.

█ It is urged by the government, however, that the deficiency assessment against the corporation of $96,803.87 was paid voluntarily by the corporation, and, if so, it cannot be recovered. This was true at common law; Chesebrough v. United States, 192 U. S. 253, 24 S. Ct. 262, 48 L. Ed. 432; but section 1014 of the act of 1924 (26 USCA § 156), in force at the time this payment was made, modified the common-law rule. Moore Ice Cream Co. v. Rose, 289 U. S. 373, 53 S. Ct. 620, 77 L. Ed. 1265. Since the enactment of this section, "no suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been *erroneously or illegally assessed or collected,* * * * or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; *but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress.*" (Italics supplied.)

This section was fully complied with in this case, as a demand for a refund was duly made upon the Commissioner before this action was brought.

The Supreme Court in Phillips v. Commissioner, 283 U. S. 589, 598, 51 S. Ct. 608, 612, 75 L. Ed. 1289, has recently stated what the rights of a taxpayer are when payment of a tax erroneously assessed is demanded:

"He may contest his liability by bringing an action, either against the United States or the collector, to recover the amount paid. This remedy is available where the transferee does not appeal from the determination of the Commissioner, and the latter makes an assessment and enforces payment by distraint; *or where the transferee voluntarily pays the tax and is thereafter denied administrative relief.* * * * Or the transferee may avail himself of the provisions for immediate redetermination of the liability by the Board of Tax Appeals, since all provisions governing this mode of review are made applicable by section 280 [26 USCA § 1069]." (Italics supplied.)

The taxpayer in this instance took the second course, if the payment in this case can be said to have been made voluntarily, and made application for administrative relief in the form of a refund and was denied relief. Dreyfuss Dry Goods Co. v. Lines, supra.

The corporation in this case did not pay a tax properly assessed against Samuel F. Scott, as in the cases cited by the government in support of its contention, but a tax illegally assessed against and collected from it. If the tax had been properly assessed against Samuel F. Scott and paid by the corporation which succeeded to the business, the corporation would have had no redress against the government. Central Aguirre Sugar Co. v. United States (Ct. Cl.) 2 F. Supp. 538.

In Clift & Goodrich, Inc., v. United States (C. C. A.) 56 F.(2d) 751, relied upon by the government, there was ground for holding that the tax sued for was actually assessed against the partnership, the assets of which a corporation was organized to take over, in which case as in the other cases relied upon by the government, where a tax assessed against one party was paid by a third party, it was held it could not be recovered. In the case at bar no tax was assessed against Samuel F. Scott for 1918 under section 330 of the 1918 act, nor did he elect to be so taxed. Following the suggestion of the Bureau of Internal Revenue, his accountants filed a return for that year as a corporation, which was not required or permitted by any statute. The tax was erroneously assessed against and collected from the corporation, which was not liable for any tax for the year 1918.

There were other and equitable grounds for denying recovery in the case of Clift &

732

Goodrich, Inc., v. United States, supra, inasmuch as in that case it was through the instigation of the partners that a refund was made of what the partners had paid for the year in question, which does not appear in the case at bar; and it was also held that the corporation officers, who were two of the partners, in making the return were acting for the partnership, and that the corporation was also acting for the partnership when the tax was paid. It cannot be fairly claimed that S. F. Scott & Sons, Inc., was acting for Samuel F. Scott when, in 1921, at the suggestion of the government, it filed a corporation return for 1918, or for his estate when it paid the tax on demand in 1925. It did not pay the tax voluntarily before assessment as in the Clift & Goodrich Case, but after an assessment of a deficiency tax with an expressed stipulation that the corporation reserved the right to appeal therefrom or claim a refund, if paid. Payment in this case was made following a demand for immediate payment, coupled with a notice that additional interest charges would be imposed, if not paid. The corporation also faced possible distraint of property, in case it was not paid.

Upon the same facts we think there is no basis for the application of the doctrine of estoppel against the corporation. To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed. It is quite evident here that the error originated in the misapprehension of the Commissioner as to the law applying to the assessment of the tax in question, and that the appellee did nothing and said nothing intending to mislead, or which could have misled the government as to any of the facts involved. If there was any misleading, it was done by the Commissioner, who misled the taxpayer by notice in his letter under date of May 3, 1921, to the effect that, in order to file a return as a corporation in 1919, he must file a return as a corporation for 1918.

In Gott v. Live Poultry Transit Co., 17 Del. Ch. 288, 153 A. 801, 805, in which case the government had filed a claim for income taxes against a corporation in dissolution in the Delaware court, and it appeared that the Commissioner of Internal Revenue had accepted improper waivers extending the time of assessment of a deficiency tax, the court said:

"The government, therefore, was fully informed of every material fact and had ample time to insist on either proper waivers or to give the sixty day deficiency notice. If it erred in the sort of waivers it should have received, the error was one solely of law and was in no wise attributable to the fraud or concealment of either the taxpayers or their transferees. I know of no case which holds that an estoppel, for which the government contends in this case, can be held to arise where the conduct on which it rests is the conduct of the party claiming the benefit of the estoppel in mistakenly judging, as here, what the rules of law are, and where no element of fraudulent concealment or misrepresentation on the part of the other party is shown."

The Commissioner was urged in 1922 to hasten the determination of the tax liability of Samuel F. Scott as an individual and of the corporation. He was again urged to do so in 1924; and even after the Commissioner assessed the deficiency tax in 1925 against the corporation, the government could have recovered the sum refunded to Samuel F. Scott until barred by section 610 of the Revenue Act of 1928 (26 USCA § 2610). The Commissioner well knew that the corporation had reserved the right to claim a refund and might do so at any time prior to July 13, 1929. The government, therefore, cannot now fairly urge, as a ground for a judgment in its favor, that, if it cannot collect a tax of the corporation, the government will receive no tax for the year 1918 on the income of the Elmdale Mill, as such a result will be due to a misinterpretation of the law and its own laches in failing to bring suit to recover a refund erroneously made by one of its officials. Nor can it be said on this record that the petitioner delayed its claim for refund and action for recovery with any intent to defraud the government.

The judgment of the District Court is affirmed.