## VAN ANTWERP v. UNITED STATES.
### No. 8436.

Circuit Court of Appeals, Ninth Circuit.
Nov. 11, 1937.

Felix T. Smith and Eugene D. Bennett, both of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., and James W. Morris, Asst. Atty. Gen., and Sewall Key and Fred E. Youngman, Sp. Assts. to Atty. Gen., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment in favor of the defendant, United States, in an action brought by plaintiff taxpayer, to recover income taxes for the year 1928, claimed to be illegally exacted and collected by distraint.

During 1927 and 1928 plaintiff was married. He and his wife filed a joint return in 1927, showing no tax due. For 1928, they filed separate returns. Taxpayer's separate return consisted of (in round figures) $11,000 interest upon an investment in the firm of E. F. Hutton & Co., dividends from the same source amounting to $200, and a distributive share in the partnership (he was a partner in E. F. Hutton & Co.) in the amount of $287,000.

A large portion of the amount returned by the taxpayer for 1928 was, in fact, community property, although it was reported as his separate income. The wife's separate return for the same year reported only her separate property.

Subsequently, the joint return of taxpayer and wife for 1927 and the separate returns for 1928 were audited by the Internal Revenue Bureau, and it was claimed that additional taxes were due on each separate return for 1928. After conferences with revenue agents, taxpayer and his wife filled out Treasury Department Form 866, for both 1927 and 1928. Form 866 is "Agreement as to Final Determination of Tax Liability." These forms provided that it was agreed there was no tax due for 1927 and that there were deficiencies in definite amounts owing on each separate return for 1928. The form agreement provided that it should not become binding until approved by the Secretary or Undersecretary of the Treasury.

On June 3, 1930, taxpayer and his wife mailed these forms, filled out by them, to the Commissioner of Internal Revenue, together with a letter signed by both husband and wife. The letter said in part:

"The execution by each of the undersigned of the agreements covering the year 1928 and the offer to accept the determination of the amounts therein set forth are conditioned upon your execution of the agreement of final determination of no tax liability for the year 1927."

The proposed agreements were never signed by the Secretary or Undersecretary of the Treasury and, therefore, never became effective.

At the bottom of each "Agreement" (T. D. Form 866) occurs the separate paragraph:

"Waiver of Restriction on Assessment and Collection of Deficiency

"Irrespective of the execution or approval of the foregoing instrument, the undersigned taxpayer hereby waives the restrictions provided in section 274(a) or 308 (a) of the Revenue Act of 1926 [44 Stat. 55, 75] or section 272(a) of the Revenue Act of 1928 [26 U.S.C.A. § 272(a)] on the assessment and collection of any deficiency in tax included in the principal sum of the tax liability as set forth in the said instrument, together with any penalty or interest properly applicable thereto as provided by law."

In each instance this waiver was signed by the taxpayer or his wife.

On July 2, 1931, without having mailed a deficiency notice giving the required 60-day opportunity to appeal to the Board of Tax Appeals, the Commissioner sent taxpayer a notice of and demand to pay the claimed deficiency for 1928. On July 17, he collected it by distraint from plaintiff's bank account. Including interest, the amount totalled $62,690.09.

On March 14, 1932, the taxpayer filed a claim for refund with the Commissioner on the grounds (1) that the collection of a deficiency without notice and an opportunity to appeal to the Board of Tax Appeals was illegal, and (2) that the income from the partnership of E. F. Hutton & Co. during 1928 was community property and hence half of it was taxable to plaintiff's wife and not to plaintiff. This was the first time plaintiff had raised an issue as to the community nature of his income. The day following the claim for refund, March 15, 1932, the statute of limitations ran against the government's assessing a deficiency against the wife on the ground that she was taxable for one-half the 1928 partnership income. The claim for refund

was denied and this action was then commenced.

On the trial, three issues were made: (1) Whether the distraint was unlawful because notice of deficiency and opportunity to appeal to the Board of Tax Appeals had not been sent the taxpayer; (2) whether, in any event, on a suit for refund, it is not incumbent upon the taxpayer to show that the taxes collected are not justly owing; (3) whether plaintiff, having delayed until the time for deficiency assessment against his wife was about to expire, is not estopped from claiming that community funds are not properly taxable entirely to him.

Trial was had· without· a jury and the court found for the government on all three issues. On the third issue it found (Tr. 56, 57):

"The plaintiff handled all of his wife's financial affairs, acting as her business agent in general. * * * He represented her at all conferences held with the defendant's taxing officers. No amended return for 1928 was ever filed by or in behalf of plaintiff's wife. At no time has she claimed any interest in said income for 1928 derived from E. F. Hutton & Company, nor has she paid any tax on said income. Upon the decision of the Supreme Court in United States v. Malcolm (January, 1931) 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714, plaintiff knew that if any part of said income from E. F. Hutton & Company belonged to his wife, she would be liable for tax upon it. For that reason he took no steps until March 14, 1932, in asserting that she had an interest in the income in question, and did not, as her financial agent, arrange to have an amended return filed in her behalf so reporting. As her financial agent he was bound in good conscience to take such action as soon as he learned that part of such income was taxable to her instead of to himself, as he had previously reported.

"The defendant's taxing officers relied on the representation in plaintiff's separate return that the income derived from E. F. Hutton & Company was his and was taxable to him in its entirety. No steps were taken by defendant's taxing officers toward assessing against plaintiff's wife a tax on any part of said income. The statute of limitations ran against the right to assess a deficiency in tax against her on March 15, 1932. On March 14, 1932, when plaintiff asserted that his wife had an interest in said income there was not sufficient time for the defendant's officers to assess a deficiency in tax against Mrs. Van Antwerp prior to the expiration of the statute of limitations.

"The income derived from E. F. Hutton & Company was partly derived from capital which was plaintiff's separate property, partly from capital in which his wife had an interest, and partly from compensation for plaintiff's personal services. The plaintiff's action in reporting the whole of this income in his separate return was a representation of fact that his wife did not have any interest in it."

Judgment for the government was entered on the findings. This appeal followed.

The issues made by the parties on this appeal are the same as those passed upon by the trial court.

■ On the first two issues we conclude that the taxpayer must show, in an action for refund of taxes illegally collected, that he does not owe the tax. We hold this to be true regardless of the legality of the Commissioner's action in collecting the alleged deficiency without sending the deficiency notice specified in 26 U.S.C.A. § 272 (a) and note. In this view of the matter it is unnecessary to decide whether· or not the taxpayer waived the deficiency notice required by the statute.

■ It is fundamental that in an action to recover taxes already paid, a taxpayer must show that the taxes are not justly owing to the government. It is essentially an action in quasi contract and is governed by equitable considerations. The Supreme Court of the United States has held, quoting Claflin v. Godfrey, 21 Pick. (38 Mass.) 1, 6:

" 'This is often called an equitable action and is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which ex æquo et bono belongs to the plaintiff. It was encouraged and, to a great extent, brought into use by that great and just judge, Lord Mansfield, and from his day to the present, has been constantly resorted to in all cases coming within its broad principles. It approaches nearer to a bill in equity than any other common law action.' "

United States v. Jefferson Electric Co., 291 U.S. 386, 402, 54 S.Ct. 443, 449, 78 L. Ed. 859.

A case squarely in point is Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L. Ed. 293, where the taxpayer sued for taxes paid in response to a deficiency assessment. The taxpayer claimed the assessment was illegal in that it was made after the statute of limitations had run against the Commissioner. The court held (284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293):

"An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

The taxpayer cites no case holding the contrary of this proposition. He cites a number of cases holding that the purpose of the creation of the Board of Tax Appeals was to provide a forum where tax liability might be adjudicated before payment, and pointing out that the process of contest before payment was protected by injunction. Warren Mfg. Co. v. Tait (D. C.) 60 F.(2d) 982; Helvering v. Taylor, 293 U.S. 507, 516, 55 S.Ct. 287, 291, 79 L. Ed. 623; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 727, 49 S.Ct. 499, 503, 73 L.Ed. 918; Ventura Consolidated Oil Fields v. Rogan (C.C.A.9) 86 F.(2d) 149.

In U. S. v. Yellow Cab Co. (C.C.A.7) 90 F.(2d) 699, 701, it does not appear that the government urged the point that a taxpayer who, as in this case, has paid, under threat of distraint, a deficiency assessment made prior to the expiry of the period allowed for review by the Board of Tax Appeals, must nevertheless show that he is not justly obligated to the government for the tax he seeks to have refunded. In the Yellow Cab Case, apparently, either the parties assumed there must be a refund of the money paid if the court had jurisdiction and the assessment was illegal, or the government admitted the taxpayer's claim to a refund under such conditions. There is, in the opinion, no discussion of the Supreme Court cases cited above.

26 U.S.C.A. § 272(a) and note requires the Commissioner, if he determines a deficiency, to send a notice thereof to the taxpayer, and provides that the taxpayer shall have 60 days within which to appeal to the Board of Tax Appeals. During these 60 days, the Commissioner is prohibited from taking any steps to assess or collect the alleged deficiency. The statute then states:

"Notwithstanding the provisions of section 3224 of the Revised Statutes [26 U. S.C.A. § 1543] the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

It is plain that this injunctive process is designed to insure to the taxpayer a hearing before the Board before the tax is paid or collected. But if the taxpayer chooses not to avail himself of this remedy, but elects instead to pay or permit distraint, he may nevertheless bring suit for refund. U. S. v. Yellow Cab Co., supra. If he elects this remedy instead of the injunctive protection, he is subject to the requirements outlined by the cases cited above. Therefore, he does not come within the principle of Ventura Consol. Oil Fields v. Rogan, supra, 86 F.(2d) 149, 155, wherein only the injunctive remedy was invoked.

We hold that plaintiff taxpayer has shown a right to a refund of that portion of the amount collected which represented his wife's share of the community income for 1928. There is sufficient in the record from which this amount can be determined. The District Court did not find it, inasmuch as the case was disposed of in favor of the government on the ground that taxpayer was estopped to claim a refund on that basis.

The government does not contest the proposition that one-half of the community earnings for 1928 were properly taxable to the taxpayer's wife and therefore erroneously returned by plaintiff as his separate property and his separate return for that year. United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L. Ed. 714. Its resistance to the claim for refund is grounded upon the assertion that plaintiff is estopped to set up the fact that any of the amount reported for 1928 was community income. This estoppel is alleged to have arisen by reason of the taxpayer's failure to claim a refund based on division of community property until one day before the statute of limitations barred a deficiency assessment against his wife.

■ The burden of proving every essential element of an estoppel is upon the party seeking to set up an estoppel. Hanneman v. Richter (C.C.) 177 F. 563, 566; Merrill v. Tobin (C.C.) 30 F. 738, 743; Mackey Wall Plaster Co. v. U. S. Gypsum Co. (D. C.) 244 F. 275, 277; Hull v. Commissioner (C.C.A.4) 87 F.(2d) 260, 262; Commissioner v. Union Pacific R. R. Co. (C. C.A.2) 86 F.(2d) 637, 640.

■ These essential elements of estoppel, each of which the government must prove in this case, are set out in an authority cited in the government's brief:

"To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed."

U. S. v. Scott & Sons (C.C.A.1) 69 F. (2d) 728, 732.

■ The government has failed to sustain its burden of showing that taxpayer's conduct fell within the principles described.

(1) The government has shown no false representation or wrongful misleading silence. The only representation on the part of the taxpayer to the effect that the income returned for 1928 was his separate property is to be found, if it exists at all, in his original return for 1928, filed on March 15, 1929. The evidence shows, however, that a separate return on the part of a husband of all his earnings, could not have been at that time a representation that the earnings were separate and not community property. Prior to March 4, 1929, the husband was required, if he chose to make a separate return, to list all the earnings for years prior to July 29, 1927, including community earnings, in his separate return. In July, 1927, the California community property law was amended to make the wife's right in the community "present, existing and equal." Cal.Civil Code, section 161a, July 29, 1927. How this amendment affected the separate returns of husband and wife was not settled until the decision of United States v. Malcolm, supra, in January, 1931. In the meantime, the government, while urging in the Malcolm appeal that husbands should still be required to return separately all the community earnings, nevertheless gave to California spouses the option to follow the existing regulation or to file separate returns, each taking one-half the community earnings, pending final settlement of the Malcolm Case. On March 4, 1929, the Bureau of Internal Revenue issued Ruling I.T. 2457, which recited the change in the California law, and stated:

"In view of section 161(a) of the California Civil Code, and pending final adjudication in court of the question as to whether the Government may tax to the husband the entire community income * * * husband and wife domiciled in California *may* each hereafter in rendering original separate returns report one-half of the income from community property acquired on and after July 29, 1927." (Italics supplied.)

■ Such I.T. rulings have "none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law." Ambassador Co. v. Commissioner (C.C.A.9) 81 F.(2d) 474, 481. Clearly, the word "may" must be construed to have its usual optional meaning.

It is obvious, and admitted by the appellee at the argument, that at the time plaintiff filed his return for 1928, the law was unsettled and that, pending final settlement, the government permitted community income to be returned entirely in the husband's separate return or one-half in each spouse's separate return, at the taxpayer's option. In these circumstances, it is plain that taxpayer's returning the entire amount in his own return could not possibly be a representation that the income was not community property.

■ Further, since this I.T. ruling is not a "Regulation" or even a "Treasury Decision," it does not have the quality of a law of which the taxpayer is charged with knowledge. The government has not sustained its burden of showing actual knowledge in the taxpayer of the existence of the I.T. ruling giving him the option to return one-half the community income. It is dated but eleven days before he made his return and it is entirely possible that he never heard of it until after his return was filed. In this situation the Commissioner has not proved that he was entitled to rely on the return as making any representation other than in the returns of prior years requiring the community to be included in the husband's income. However,

even if the taxpayer had had notice, the Commissioner knew he was exercising an option by which he might include all the community income in his separate return.

By March 15, 1930, the taxpayer had learned of his option and his return for 1929 advised the Commissioner that he claimed the partnership income was community property.

The government has entirely failed to prove any "wrongful misleading silence" on the part of the taxpayer which estops the latter from claiming a refund on the basis of the proper division of community property for tax purposes. The estopping silence claimed by the government is plaintiff's failure to point out between the decision in United States v. Malcolm, in January, 1931, and the date of his claim for refund, March 14, 1932, the fact that the partnership portion of the income reported on his separate return for 1928, was, in fact, community income.

Since the government permitted Mrs. Van Antwerp not to return her share of the community income for 1928, and contended that she should not, it was incumbent upon the Commissioner to reaudit her income for that year as soon as the Malcolm decision advised him of his error. This for the protection of the Treasury which otherwise would lose what she owed, because of the government's wrong interpretation of the law. Fourteen months remained for such reaudit and deficiency assessment, during which the government did nothing. Having failed to do so, it seeks to transfer the loss from that neglect to the appellant taxpayer.

There is nothing in the record showing any duty on plaintiff's part to advise the Commissioner as to the nature of the income. Plaintiff's returns for 1927, 1928, and 1929 showed the source of each item, and the 1929 return showed its community character. As we have already pointed out, the inclusion of all the 1928 income in the husband's separate return was not a representation that it was or was not community. There was no basis, therefore, upon which the Commissioner could assume, after the Malcolm decision, that the 1928 income, the sources of which taxpayer had advised him in 1929, was separate property.

▮ The government points out that husband and wife may, in California, alter the nature of their income and property by contract. It contends that taxpayer's silence was in effect a representation that such a contract existed between taxpayer and his wife, and operated to make all the earnings the separate property of the husband. This contention is of no merit for the reasons we have already pointed out. Inasmuch as the Commissioner at no time had reason to suppose the property was not community, he had no reason to suppose the existence of a contract making it non-community.

(2) The second requirement of estoppel is that the error must "originate in a statement of fact." U. S. v. Scott & Sons, supra. We have already shown the failure of the government to prove any representation of fact or misleading silence giving rise to an inference of fact.

"(3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed." U. S. v. Scott & Sons, supra.

Here also, the government fails to discharge its burden of proof. We have already pointed out that all the pertinent facts as to the nature and sources of plaintiff's 1928 income were made known to the Internal Revenue department of the government, both by taxpayer's returns and by the government's reaudits.

There is no evidence in the record that the government was adversely affected by plaintiff's conduct. Although it produced as witnesses the agents of the Internal Revenue Bureau who audited plaintiff's returns and those who discussed with plaintiff a settlement of his tax liability, not one testified that he was led by plaintiff's original return, or by plaintiff's subsequent conduct or silence, to suppose that the income was separate and not community property. Not one witness for the government testified to a belief that a contract existed between taxpayer and his wife, altering the nature of the community earnings.

If the government is "adversely affected," it is not by reason of any conduct on the part of the plaintiff, but, rather, because the Commissioner neglected, for reasons of his own, to reaudit Mrs. Van Antwerp's income, with a view to determining whether she had any community income assessable against her, after the Supreme Court's determination of the law adversely to the Commissioner's interpretation at the time her return was first audited.

Reversed.