NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Loren A. DECKER, d/b/a Decker Truck Lines, Respondent.

No. 16738.

United States Court of Appeals Eighth Circuit.

Aug. 26, 1963.

Joseph C. Thackery, Atty., N. L. R. B., Washington, D. C., for petitioner and Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Paul Elkind, Atty. for N. L. R. B., Washington, D. C., on the brief.

John H. Mitchell, Fort Dodge, Iowa, for respondent.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

GIBSON, District Judge.

The National Labor Relations Board seeks enforcement of its Supplemental Decision and Order of October 12, 1962, against Loren A. Decker, d/b/a Decker Truck Lines, (hereinafter called Decker), whose territory is at Fort Dodge, Iowa, within the jurisdiction of this Court. The Board's Decision and Order are reported in 139 N.L.R.B. No. 15.

The Supplemental Order made by a three-member panel of the Board pursuant to § 3(b) of the Act directs Respondent to pay Carl Reisner net back pay in the amount of $2106.58.

Basis for Supplemental Order arises from a prior Decision and Order of the Board on August 24, 1960, finding *inter*

*alia* that the Respondent had discharged Carl Reisner in violation of § 8(a) (1) and § 8(a) (3) of the Act and directing that the Respondent offer Reisner immediate and full reinstatement to his former, or substantially equivalent position without prejudice to his seniority or other rights and privileges and make him whole for any loss of pay suffered by reason of its discrimination against him. (128 N.L.R.B. 858). The Board's Order was enforced in full by this Court by Decision and Decree of December 4, 1961, reported in 296 F.2d 388.

On March 22, 1962, the Board's Regional Director issued a Backpay Specification which ultimately resulted in the Supplemental Order here under consideration for enforcement. The Trial Examiner found in his Supplemental Intermediate Report that Reisner was entitled to payment by Respondent of $2106.58. Both Respondent and General Counsel filed exceptions to this Report.

The factual situation is as follows: Subsequent to the Board's Order of August 24, 1960, finding Respondent in violation of the Act and directing that Respondent offer Reisner immediately his full reinstatement to his former or substantially equivalent position * * * and make him whole for any loss of pay suffered by reason of its discrimination, the Compliance Officer sought enforcement of that decree pending the appeal by Respondent on that Order, had several meetings with Respondent's Counsel and made a check of Respondent's records. His compilation of the back wages due Reisner from the date of discharge in March 1959 to November 1, 1960, is set forth in Respondent's Exhibit 2(a), which shows net back pay due Reisner of $479.04. The Board, through its agents, also informed Respondent that Reisner must be reinstated as called for in the Order. A letter of reinstatement was sent by Respondent's counsel under date of December 1, 1960, couched in the language of the Order. Reisner by letter and in person presented himself to Respondent for work and announced that he was available for work at any and all times. Respondent's records show that Reisner, aside from the letters written to Respondent, called at Respondent's office 4 times during the month of December 1960, although he received no work. Reisner's first trip after reinstatement was on January 11, 1961; his next trip was on January 17, 1961, and the next on February 27, 1961. Without detailing the other calls and trips, it appeared that Reisner was called approximately 20–25 times and responded for 6 trips for the period, December 1, 1960 to June 30, 1961. Between the period from November 1, 1960 to May 20, 1961, Reisner's actual earnings from Respondent were but a minor fraction of what he would have been entitled to as a regular part-time driver. He never at any time received any earnings that approximated either his prior earnings before his discriminatory discharge nor earnings calculated at 58 per cent of the average earnings of full-time drivers. The last pay Reisner received from Respondent was under date of May 20, 1961, when he received $22.83 for the prior two-week period. For illustration, the average wages for a full-time driver for the same period was $309.88, and for a regular part-time driver calculated under the 58 per cent formula, $179.73. During this time numerous letters were written by the National Labor Relations Board Regional office to Respondent, requesting Respondent to bring himself in full compliance with the Board's Order. Reisner's last trip for Respondent was May 15, 1961. He was called 4 times after that by Respondent, but Respondent's last records contain the statement to the effect that Reisner had a steady job and wasn't interested in anything else right now. Apparently, since that date there was no further relation between Reisner and the Respondent. The Board's original order was then by decision and decree of this Court under date of December 4, 1961, ordered enforced in full. The Board then on March 22, 1962, issued its Supplemental Backpay Specification, which resulted in the hearing before the Trial Examiner at Fort Dodge, Iowa, on

May 1 and May 2, 1962. The Trial Examiner issued his Supplemental Intermediate Report and Recommended Order under date of July 6, 1962, which Order found that Reisner was entitled to payment by the Respondent of $2106.58 for back pay. The Board sustained the findings of the Trial Examiner with modifications noted, which made no variance in the amount, under date of October 12, 1962. This Order is now before this Court for a supplemental decree of enforcement.

The Trial Examiner delineated the following issues and his conclusions thereon:

1. Was there an accord and satisfaction of all back pay due for the period from date of discharge up to and including the month of October 1960? If so, was the Board estopped from allowing any additional back pay? The Trial Examiner found that this was proper payment for the period involved (end of October 1960) but such settlement did not estop subsequent claims.

2. Was a proper offer of reinstatement made to Reisner by letter of December 1, 1960, and subsequent calls to work? The Trial Examiner found that the reinstatement offer was never properly implemented, that calls to Reisner for about 20 days' work from December 1960 to the end of 1961, was little more than token compliance with the order of reinstatement; and that Respondent failed to offer Reisner work which would have constituted "reinstatement to his former or substantially equivalent position."

3. Whether or not Reisner was entitled to reinstatement as a full-time or part-time driver. The General Counsel for the Board contended that, but for Reisner's discriminatory discharge, he would have advanced to the status of a full-time driver by March 22, 1959. The Trial Examiner held adversely to the General Counsel's position on this issue and found Reisner to be entitled to the position of a part-time driver only. General Counsel did concede to Respondent's position that back pay should be computed on a basis of 58 per cent of the average earnings of a full-time driver if he was not entitled to reinstatement as a full-time driver.

The Trial Examiner concluded that the General Counsel and Respondent are in accord that, as a part-time driver, Reisner would be entitled to back pay based upon a gross back pay of 58 per cent of the average earnings of a full-time driver, less 58 per cent of his interim earnings for the periods involved; made a computation thereof finding "Total Net Backpay" of $2106.58; and ordered Respondent to pay Reisner that amount.

The Respondent in resisting the Supplemental Backpay Specification contends:

1. That no credit was given for the settlement of October 1960; that this settlement operated as an accord and satisfaction; and acted as an estoppel on any subsequent claims.

2. Reinstatement was offered to Reisner who accepted work on several occasions and refused it on numerous other occasions, making no complaint on the amount of work offered.

3. That Reisner voluntarily quit his part-time employment with Respondent in June of 1961, advising Respondent that "he had a steady full-time job and wanted no more work from respondent"; yet, the Board allowed backpay for all of 1961.

4. And in general, that there was no evidence supporting the Trial Examiner's Report and the Board's Supplemental Decision and Order.

5. On appeal, he did not agree with Trial Examiner's statement and finding that he had agreed to the 58 per cent formula of the average earnings of a full-time driver for computing a part-time driver's earnings and insisted that he had never agreed to the 58 per cent formula.

As outlined above, the issues as perceived by the Trial Examiner are at variance with those set forth in the Respondent's brief. The Trial Examiner made a particular point to attempt to clarify and

state the issues involved in this supplementary back pay proceeding.[1]

The Trial Examiner's rulings were affirmed by the Board with a singular modification specifically rejecting Respondent's contentions that its check sent to the Board's Regional Offices in November 1960 constituted an accord and satisfaction for all back pay due Reisner, both before and after the date of that check and that the Board is estopped from raising the back-pay issue. The Board also agreed with the Trial Examiner that the Respondent did not make Reisner a proper offer of reinstatement as directed in the Original Order. The Board further held "it is thus clear that no settlement was ever concluded. Moreover, at the hearing the Respondent and General Counsel stipulated that the Board was not apprised of the so-called settlement and it is well settled that only formal approval by the Board will make a settlement binding upon the parties. N. L. R. B. v. Armstrong Tire & Rubber Co., 263 F.2d 680 (C.A.5); Bonnar-Vauter, Incorporated, 135 N.L.R.B. No. 125."

In dealing with the issues raised by the Respondent, we consider:

■ First, the contention that reinstatement was offered to Reisner and that he was reinstated to substantially his former position in compliance with the mandate of this Court in upholding the original decision of the Board in this matter, reported in 296 F.2d 338. The letter of reinstatement dated December 1, 1960, was in proper form, being couched in the formal language of the reinstatement order to the effect that Reisner was offered immediate and full reinstatement to his former, or substantially equivalent position with Respondent, without prejudice to any seniority or other rights previously enjoyed, and he was to be made whole for any pay suffered as a result of the discrimination. At that time a check previously had been delivered to the National Labor Relations Board Regional Office in Minneapolis, Minnesota, in the amount of $479.04. This letter was a proper declaration of reinstatement but the evidence showed that Reisner was not called for work until January 11, 1961, and that from the period of the offer, December 1, 1960 to June 10, 1961, Reisner was called for work approximately 20 to 25 times and responded on 6 occasions; that by said work he earned only about one-third the amount that he would have earned as a regular part-time driver as reflected by the prior records of the Company before he was discharged on March 18, 1959. The Trial Examiner found that the offer of reinstatement was never properly implemented and that only little more than token compliance was made by Respondent with the order of reinstatement and that Respondent failed to offer Reisner work on a basis which would have enabled him to earn approximately 58 per cent of the average earnings of full-time drivers, which would be the standard constituting reinstatement to his former or substantially equivalent position. The Board's order approving the Trial Exam-

---

1. After considerable discussion, both on and off the record, the Examiner stated for the record Tr. p. 94 and 95: "Let the record show that in an off the record discussion, Mr. Mitchell discussed with the Examiner the issues which he believed he now feels are raised by his amended answer."

"One, whether there is accord and satisfaction for the period up to November 1, 1960.

"Two, whether or not full compliance with the order of reinstatement required that Reisner be given a job as a part-time driver or whether by seniority or rights of seniority he would have, had there been no discrimination against him, been entitled at some time to become a full-time driver.

"And, third, whether or not the method of computing back pay as set forth in Section XIV of the amendment to his answer would or would not be the appropriate method of figuring the amount of back pay due to Reisner.

"The above is the Examiner's understanding of the issues that are raised by the answer. Are there any other issues which Respondent feels he wishes to litigate?

"Mr. Mitchell: I believe that the Examiner has very well stated what I believe to be the issues * * *."

iner's report is substantially supported by the evidence on this issue.

■ It is well settled that where formerly under the Wagner Act "The findings of the Board as to facts, if supported by evidence, shall be conclusive," Act of July 5, 1935, § 10, 49 Stat. 449, 454, 29 U.S.C. § 160(e), the scope of review on a Labor Board hearing has been broadened by the Administrative Procedure Act and the Taft-Hartley Act. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. As stated therein:

"Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Court of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied." P. 491 of 340 U.S., p. 466 of 71 S.Ct.

Also noted therein (supra) 340 U.S. p. 493, 71 S.Ct. p. 467:

"The Taft-Hartley Act provides that 'The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.' * * * 29 U.S.C. (Supp. III) § 160(e)."

See also National Labor Relations Board v. Brown & Root, Inc., 311 F.2d 447 (C.A.8).

■ Second, whether or not an accord and satisfaction had been reached with Reisner for all of the back pay he would be entitled to receive from Respondent with the additional ancillary contention that such accord and satisfaction did estop the Board from hearing any subsequent claims for back pay.

Neither the Trial Examiner nor the Board specifically passed upon the issue whether an accord and satisfaction was had for the period covered by the check to Reisner of $479.04, which specifically covered a back-pay period designated as being from the effective date of his dis-

charge to November 1, 1960, for the reason that neither the Trial Examiner nor the Board sustained the General Counsel's contention that Reisner was entitled to be considered as a full-time driver, rather than a regular "part-time driver" which he was found to be at the time of his discriminatory discharge on March 18, 1959. The 58 per cent formula used in figuring the backpay specifications due Reisner for the period from March 18, 1959 to November 1, 1960, was agreed to by Respondent, who introduced in evidence as Respondent's Exhibit 2(a) the backpay specification containing such computations and contended that the back-pay issue was settled by an agreement which was based on these exact computations. The formula worked as follows: Since Reisner was considered a regular part-time driver who prior to his discriminatory discharge had earned 58 per cent of the earnings of the average full-time driver, he was to receive for back pay a total of 58 per cent of those earnings of the average full-time driver less 58 per cent of his gross interim earnings less certain minor interim expenses. An examination of the record clearly reflects the Board's contention that the check for $479.04 dated November 23, 1960, and delivered to the National Labor Relations Board, Regional Board's office by letter of Respondent's counsel covered and was intended to cover only the back-pay period from the effective date of Reisner's discharge, March 18, 1959, to the end of October 1960; and further that no Board approval under the original mandate of this Court sustaining the Board's original order of reinstatement and reimbursement for back pay could be satisfied by the payment of the above check for the back-pay period. This in no way could be binding upon future or subsequent violations of the Court's mandate for reinstatement of Reisner to his former or substantially equivalent position. This backpay specification could not legally, under any rational theory, be considered as a complete and final adjudication of Reisner's employment rights with Respondent.

The Board takes the position that such cannot be an accord and satisfaction, because such agreement was never submitted nor approved by it. The Transcript, Tr. 83, shows that no Board approval of any settlement agreement was ever sought or granted in this case. Inasmuch as the Trial Examiner and Board did not sustain the General Counsel's position that Reisner should be considered as a full-time driver, the issue of whether an accord and satisfaction for the period involved was had is moot for the reason that admittedly Respondent paid the amount due for said period that was found to be due by the Trial Examiner and the Board for the period, March 18, 1959 to November 1, 1960. The further contention of Respondent raised now on appeal that such settlement was an accord and satisfaction for any subsequent back pay due Reisner by reason of Respondent's failure to properly implement the Court's mandate to reinstate Reisner to his former or substantially equivalent position is not well taken. A proper letter of reinstatement was sent December 1, 1960 but was never carried out by Respondent and was found by the Trial Examiner and the Board to be only tokenly implemented thereafter. The Board in approving the Examiner's Report, specifically rejected Respondent's argument that the check of $479.04 constituted an accord and satisfaction for all back pay due Reisner, both before and after the date of the check and held that the Board is not estopped from raising the backpay issue. The pertinent part of that Order reads as follows:

"The record shows that the Compliance Officer and Regional Director repeatedly advised the Respondent both before and after receipt of the check that the case would not be closed nor did the Board approve a settlement until a bona fide offer of reinstatement had been made to

Reisner. We agree with the Trial Examiner that the Respondent did not make Reisner a proper offer of reinstatement. It is thus clear that no settlement was ever concluded. Moreover at the hearing, the Respondent and General Counsel stipulated that the Board was not apprised of the so-called settlement and it is well settled that only formal approval by the Board will make a settlement binding upon the parties. N. L. R. B. v. Armstrong Tire and Rubber Co., 263 F.2d 680 (C.A.5); Bonnar-Vauter Incorporated, 125 N.L.R.B. 125."

We do not deem it necessary to pass upon the issue of whether or not an accord and satisfaction was reached for the period ending October 31, 1960, as both sides have agreed that the amount paid for that period was correct as to Reisner's status of that of a regular part-time driver and not a full-time driver. If the Board had found that Reisner was entitled to reinstatement or advancement to the position of a full-time driver, then such issue would be material. This Court does rule that such a settlement in payment to Reisner for the period mentioned does not act as an estoppel to the Board nor as an accord and satisfaction for any future violations of this Court's mandate subsequent to October 31, 1960. The reasons for this appear obvious. All Reisner received was the actual back pay from the date of his discharge to and including October 31, 1960. He was entitled under the Board's and this Court's mandate to no less than this amount. He was further entitled according to the mandate to be reinstated to his former or substantially equivalent position as a regular part-time driver. This Respondent did not do. Additional back pay would accrue until Reisner was properly reinstated or until some other proper termination was made of his employment.[3]

2. A reading of the transcript conclusively shows that all parties to the hearing were in complete agreement; that the back pay specifications which were admitted into evidence as Respondent's Exhibit 2

(a), which was the Field Compliance Officer's compilation of back pay due from the date of discharge to the end of October 1960 was specifically called to the attention of the parties by the Examiner,

The Trial Examiner stated that any new claim would have to start with the fourth quarter of 1960. In order to have a true accord and satisfaction the parties must be cognizant of all of the issues involved and intend to make a complete and final binding agreement respecting all of their differences, claims and counter claims that exist at a given time. It is clear that Respondent was not mislead by the initial backpay specification settlement and not being mislead, he could not invoke estoppel against the Board, even though there might be some legal basis for making such claim.

As held in Gaylord v. Commissioner of Internal Revenue, 9 Cir., 153 F.2d 408, 416,

"* * * To constitute estoppel there must be a misrepresentation of a fact or a wrongful misleading silence with respect to a fact. Van Antwerp v. United States, supra [9 Cir., 92 F.2d 871]; United States v. S. F. Scott & Sons, 1 Cir., 69 F.2d 728, 732. A person knowing the facts or in a position to know them cannot claim the benefit of estoppel. Hull v. Com'r, 4 Cir., 87 F.2d 260."

█ Since the parties were only dealing with the amount of back pay due Reisner for the period from the date of his discriminatory discharge to November 1, 1960, this constituted the original period of demand. Any settlement made therefor for this period could in no way have any force and effect for any demands beyond and subsequent to such a period. As stated in Equitable Life Assurance Society v. Mercantile Commerce Bank & Trust Co., 143 F.2d 397, 401 (8th C.C.A. 1944): "To constitute an accord and satisfaction a payment must be offered, intended, and accepted as a satisfaction of the original demand."

█ Third, whether or not the method of computing back pay was appropriate. The method of computing back pay for Reisner as a regular part-time driver was predicated upon a prior ratio of his earnings to that of a full-time driver at 58 per cent. The 58 per cent formula was used in the original backpay specification order. Respondent's answer states, Tr. 93 and 94:

"That Respondent's greatest alleged damage could only be properly determined on the following basis: by taking 58 per cent of the average earnings of Respondent's full-time drivers for the period and by subtracting therefrom 58 per cent of Reisner's earnings during the same period, and this would represent the alleged loss to Reisner during the period."

This formula was projected by the Board for the four quarters of 1961. The use of such formula was certainly not arbitrary or unreasonable, and in fact appears to be a sound solution to such a situation. The method or formula used by the Board not being arbitrary or unreasonable, the Court will not disturb it. N. L. R. B. v. Brown & Root, Inc., supra, 311 F.2d 447, 451. As aptly stated in the Brown case:

"* * * It is not the function of this Court to try the case de novo or to substitute its own appraisal of the evidence for that of the Board. If the Board has conceived the law correctly, if it has not acted arbitrarily or capriciously, and if its findings are supported by 'substantial evidence on the record considered as a whole,' they are conclusive and binding on this Court even though we might have made different findings upon an independent consideration of the same evidence. * * *"

It is proper that the Board should have a wide discretion in dealing with the multiple problems which have many different facets in arriving at a fair method

and Counsel for Respondent sought permission to amend his answer by striking certain pleadings from his answer and stated: Tr. 90:
"The back pay specifications settlement was made in the last quarter of 1960 but covered all of the year up to and including the month of October of 1960 and any new claim would have to start with the month [November] of 1960 and continue to the rest of 1960 and 1961."

of assessing back pay. As stated in the Brown & Root case, supra, 311 F.2d 452:

"In solving the problems which arise in back pay cases the Board is vested with a wide discretion in devising procedures and methods which will effectuate the purposes of the Act. Labor Management Relations Act of 1947, § 10(c), 29 U.S. C.A., § 160(c); National Labor Relations Board v. Seven-Up Bottling Co., supra [344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377]; Phelps Dodge Corp. v. National Labor Relations Board, supra."

The statement of the Court respecting that formula applies only to the use of the formula where called upon by the evidence in this case.

Fourth, the issue as to whether Reisner was available for further work with Respondent in June 1961 or whether he had secured other employment engaging his full services. Respondent raised this issue in his answer. The Board claims that the only evidence in the record bearing up on this contention is an entry contained in Respondent's Exhibit 3, which Exhibit is apparently a prepared compilation of the Company's records or Company's log respecting Reisner, which log we assume was kept in the regular course of business. The compilation shows the dates on which Reisner called or was called for work either by 'phone or in person, and the dates that he was accorded work, including the dates on which he was called by Respondent for work, although he was not available for such work. Apparently, many times his wife answered the 'phone and stated that he was working for someone else and was not available. It, of course, was not incumbent on Reisner to be available at all times for this part-time work, as Respondent did not intend to employ him full time. The last two statements in this Exhibit taken from the Company's books state:

"6/1/61 Called his house and his wife said he wasn't available as he was working for Hansen Produce and was getting ready to leave for Bos-

ton; told her to have him call when he got back. He never called; learned that he came in and left again same day for Boston."

"6/10 or 11/61 Loren talked to him about work. Said he had a steady job and wasn't interested in anything else right now. Was working regularly for Hansen Produce."

Dale Decker, the party who made the entries, testified that he acted as a dispatcher and made the work assignments. Then the parties agreed that Dale Decker would testify to the facts set forth in Respondent's Exhibit 3, from which the above entries were taken. The General Counsel for the Board in stipulating for the Exhibit reserved objections to materiality and to hearsay testimony. The Board now challenges the entry, giving Loren Decker's recital that Reisner had a full-time position and wanted no more work at this time and thus claims there is no probative evidence that Reisner was unavailable for work and that any alleged disclaimer of Reisner's should be disregarded.

It is unfortunate that this vital point was handled in this manner. All parties who knew anything about this particular issue were in attendance at the Examiner's hearing, both Dale Decker and Loren Decker testified, and Reisner was present but did not testify at the hearing. We are of the opinion that if Reisner or the General Counsel was going to take issue with this disclaimer that immediate inquiry should have been made of Reisner and of Loren Decker. Both parties are equally guilty in not clearing up this facet of the case. The hearing is for the sole purpose of ascertaining the factual situation and both sides were under a duty to see that the full facts were presented, even though this hearing is conducted as an adversary proceeding. It would have taken less time to ascertain from Reisner and Loren Decker themselves as to Reisner's availability or his full-time employment with Hansen Produce than it takes to discuss this issue. This is in no manner a criticism of the Trial Examiner's hearing as a reading of

the record discloses that he did an admirable job in expediting and conducting the hearing. We feel that all parties concerned overlooked this rather vital issue of availability for employment or termination of employment.

The entry in question was in the business records of the Respondent and was made prior to the instigation of this present proceeding. It did show that Reisner was working at that time for Hansen Produce and that he did leave for Boston. There are no further entries in the log or records of the Respondent that were introduced into evidence that show either that Reisner was available for work after the June 10th or 11th, 1961 date, that he made any inquiry concerning work or that any offers of work were made to him. The burden of proof imposed upon the General Counsel to show gross back pay to which a discriminatee is entitled was under the Trial Examiner's view of the proceedings upon the General Counsel. This would include also as a concomitant part of that burden to show that he was available for part-time work and that he had not voluntarily relinquished such part-time employment to work for someone else full time. The declaration attributed to Reisner by Loren Decker was made by the person most interested in the outcome of this proceeding, namely, Reisner.

While the purposes of the Act was "to eliminate the causes of certain substantial obstructions to the free flow of commerce" Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 182, 61 S.Ct. 845, 847, 85 L.Ed. 1271, Reisner was at least a party to the proceeding that was personally and financially interested in the outcome. He was the actor around whom the proceedings resolved. Under these circumstances, if there was any question about him having assumed a full-time job elsewhere, he could easily have and should have refuted such, thus laying that issue at rest.

The opportunity for cross-examination of Loren Decker, who stated that Reisner made such declaration, was available to the General Counsel. Thus, the vice apparent in most hearsay statements of non-opportunity for cross-examination is not present in this case. If Loren Decker had testified according to the entry made in the Respondent's records that would not be hearsay; it being a declaration against interest made by a principal in the proceeding. The compilation made by the Trial Examiner and inserted as Appendix A to his Report lends credence to the belief that Reisner did assume full-time employment with others, as his net interim earnings for the third quarter of 1961 were $1350 and in the fourth quarter $2008, the fourth quarter substantially approximating the average earnings of the regular full-time driver of the Respondent.

We are of the opinion that this issue of termination having been raised in the pleading and the book entries of the Respondent having contained evidence supporting such issue, that a prima facie case is made in favor of Respondent on this issue so that it was incumbent upon Reisner or the General Counsel for the Board to refute the contention if it were not well founded.

The fact that no further offers for work were made by Respondent to Reisner and conversely no offers by Reisner to work nor any inquiry for work by him would lay the foundation for a reasonable inference that Reisner had terminated his employment with Respondent by securing full-time work elsewhere. In reviewing this phase of the case, we are mindful of the direction and admonition set forth by the United States Supreme Court in Universal Camera Corp. v. N. L. R. B., supra, 340 U.S. 487, 488, 71 S.Ct. 463, 464:

That Court in considering the scope of review and standard of proof required to support a decision of the Labor Board made the following significant statements:

"From the legislative story we have summarized, two concrete conclusions do emerge. One is the identity of aim of the Administrative Procedure Act and the Taft-Hartley Act regarding the proof with which the

248

Labor Board must support a decision. The other is that now Congress has left no room for doubt as to the kind of scrutiny which a Court of Appeals must give the record before the Board to satisfy itself that the Board's order rests on adequate proof."

" * * * And so we hold that the standard of proof specifically required of the Labor Board by the Taft-Hartley Act is the same as that to be exacted by courts reviewing every administrative action subject to the Administrative Procedure Act."

"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board's decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitively precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement in both statutes that courts consider the whole record. * * *"

" * * * Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

We hold that the above would apply also to that portion of the Board's order, where severable, that is not supported by substantial evidence on the whole record.

We, therefore, hold that the Board's Order fixing the back pay of Reisner is valid and proper for the months of No-vember and December 1960 and for the first two quarters of 1961, this being about as close an approximation as possible under the rather unsatisfactory situation in which this issue of termination was left unresolved, and that the back pay ordered for the third and fourth quarters of 1961 is invalid and is not supported by the evidence on the whole record.

Enforcement of the Supplemental Order is awarded in part and denied in part against Respondent. Enforcement of that part of the Order allowing Reisner back pay for the period specified above, namely November and December 1960 and the first six months of 1961 in the amount of $1758.22 as found by the Board for that period, is awarded.